IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Nathaniel Bailey,<br><br>                Petitioner,<br><br>vs.<br><br>Edward F. Reilly, Chairman; U.S.<br>Parole Commission; and Warden of<br>FCI Bennettsville,<br><br>                Respondents. | Civil Action No. 6:06-1786-DCN-WMC<br><br>**REPORT OF MAGISTRATE JUDGE** |

The petitioner, a state prisoner proceeding *pro se*, seeks habeas corpus relief pursuant to Title 28, United States Code, Section 2241.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review posttrial petitions for relief and submit findings and recommendations to the District Court.

## BACKGROUND OF THE CASE

The record reveals that the petitioner is currently incarcerated at FCI Bennettsville, SC, serving an aggregate a sentence of 15 years and 4 months to life imposed by the Superior Court for the District of Columbia for the offenses of carrying a pistol without a license and assault with a deadly weapon (ex. A, Bureau of Prisons Sentence Monitoring Computation Data).

On May 28, 1996, the D.C. Board conducted the petitioner's initial parole hearing (ex. B). At this consideration, the petitioner's salient factor score, which was based

in part on five prior convictions and two prior commitments of more than 30 days, was four (*id*. at 6). The petitioner's total point score was three, which under the guidelines then in effect (the 1987 guidelines) suggested that parole be denied and a reconsideration hearing conducted within 12 months of the hearing, i.e., a 12-month "set-off" (*id*. at page 7). The D.C. Board issued its decision denying the petitioner parole and ordering a reconsideration hearing by November 28, 1997 (ex. C).

On October 22, 1997, the D.C. Board conducted the petitioner's reconsideration hearing (ex. D). At this consideration, the petitioner's point score was three, which suggested that he be granted parole, but the D.C. Board again denied him parole and ordered a reconsideration hearing by October 22, 1999, a decision which exceeded the guidelines (ex. E). The D.C. Board explained that it had departed from the guidelines based upon the petitioner's repetitive criminal behavior and a prior record of violent behavior (*id*. at 2).

On January 18, 2000, after the Parole Commission assumed the responsibility of making parole release determinations for all eligible D.C. Code offenders, a Commission hearing examiner conducted a preassessment of the petitioner's case (ex. F). The hearing examiner, who had obtained a copy of the police report for the petitioner's most recent conviction, considered his prior assaultive history and his most recent offense and concluded that the petitioner was "an extremely serious risk at this time" (*id*. at 3).

On March 15, 2000, another Commission hearing examiner conducted the petitioner's reconsideration hearing and applied the 1987 guidelines (ex. G). Using the petitioner's total point score from the previous hearing and subtracting one point for his program achievement, his point score was two, which suggested that parole should be granted at this consideration (*id*. at 6). The hearing examiner concluded that the petitioner was a "very high risk," and recommended that parole be denied and that a rehearing be conducted after two years, a departure from the guidelines (*id*. at 2). Upon administrative

2

review of the hearing examiner's recommendation, the Executive Hearing Examiner agreed with the presiding hearing examiner's recommendation to deny the petitioner parole, but recommended that the rehearing be conducted after 60 months (ex. G at 3).[1] The Executive Hearing Examiner believed that the 60-month set-off was appropriate because of the seriousness of the petitioner's past criminal history, his poor adjustment in federal custody, and the assaultive nature of his most recent offense.

According to the Executive Hearing Examiner, the petitioner's criminal record began when he was 12 years old, and the petitioner began his assaultive behavior at the age of 14, when he stabbed another boy (*id.*).[2] In her addendum to the hearing summary, the Executive Hearing Examiner recounted the petitioner's criminal history in the community as well as his assaultive conduct while incarcerated (ex. G at 3-4).

On April 13, 2000, the Parole Commission issued its decision that the petitioner be denied parole and continued to a rehearing in 60 months (ex. I). The Commission provided the following reasons for its departure from the guidelines:

> You are more serious risk than indicated by your Grid Score. You have a criminal history replete with assaultive behavior beginning at the age of 14 when you stabbed another boy. During service of your YCA sentence imposed in the early 1970's, you were involved in ongoing assaultive behavior. On September 16, 1975, you stabbed another inmate which resulted in a 4-year sentence in the Eastern District of Virginia, suspended with 5 years probation.
>
> During service of your sentence at FCI, El Reno, you received incident reports for fighting and assault. On August 15, 1976, you stabbed an inmate receiving a 5-year sentence in the Western District of Oklahoma. While still at El Reno, on May 4, 1977, you and several others stabbed an inmate leading to

---

[1] The role of the Executive Hearing Examiner is to review the recommendation of the hearing examiner before the case is presented to the Commissioners for the final decision. *See* 28 C.F.R. § 2.23 and *Allston v. Gaines*, 158 F.Supp. 2d 76, 79 (D.D.C. 2001).

[2] Evidence of this stabbing is found in a Bureau of Prisons classification summary, prepared while the petitioner was housed at the Medical Center for Federal Prisoners in Springfield, Missouri. *See* Exhibit H.

3

your conviction and sentence of 10 years for assault with intent to commit murder and hindering apprehension. This second conviction for assault by stabbing lead to a revocation of your probation and the imposition of a 4-year concurrent sentence.

Even after receiving 3 separate sentences as a result of assaulting other inmates by stabbing them, you continued your negative behavior, by receiving incident reports at USP Marion for assault, fighting and setting a fire. Your horrendous assaultive behavior finally resulted in your placement in the USP, Marion Control Unit Program from July 1981 through November 1982. Even after your release from the Control Unit, you continued your assaultive behavior. On 12-23-83, while at USP, Lewisburg, you stabbed an inmate. When another inmate attempted to intervene, you also stabbed him.

Within 8 months of your mandatory release from custody on December 16, 1985, you became involved in your instant offense which involved yet more assaultive behavior.

You placed a gun to the head of a female victim and took her into an alley. When a friend of the victim tried to intervene, you fired shots at the friend, hitting her once in the leg. You then threatened the victim and told her that you were going to kill her boyfriend's entire family.

During service of the instant sentence, you have received disciplinary reports for possession of major contraband involving drugs/positive urine on at least 3 occasions, 1988, 1992, and as recent as 1995. Your earlier history of assaultive behavior and your assaultive conduct while incarcerated are extremely disturbing, given the controlled environment of custody. Release to the community, where custodial controls are nonexistent, creates an extremely high risk to the community. During your last release from custody via mandatory release, you became involved in assaultive behavior, utilizing a gun as your weapon of choice to assault your victims within 8 months of your release.

Although you have programmed extensively, your risk to the community far outweighs any parole consideration at this juncture or in the near future. Denial of parole and a 60-month rehearing date are seen as appropriate decisions in your case. At your next hearing, you will be 52 years of age which may have some determination in a future parole consideration, absent any new disciplinary infractions and continued programming, especially individual counseling to address your assaultive behavior.

*Id*.

On March 15, 2005, a Commission hearing examiner conducted the petitioner's rehearing (ex. J). Using the petitioner's total point score from the previous hearing and subtracting one point for his program achievement, the petitioner's total point score was one, which suggested that parole should be granted at this consideration (*id*. At 3). The hearing examiner recommended that the Commission parole the petitioner on September 13, 2005 after he had served 230 months (*id*. at 2).

The Commission disagreed with the hearing examiner's recommendation and on April 4, 2005, the Commission issued its decision denying the petitioner parole and continuing him to a rehearing in three years (ex. K). The Commission provided the following explanation for its decision to depart from the guidelines:

> [Y]ou are a more serious risk than indicated by your point score because of past repetitive assaultive behavior (3 inmate stabbings) and the instant offense is also violent.

In the instant action challenging the Commission's decision to deny him parole and schedule a reconsideration hearing in three years, the petitioner raises the following claims:

> (1)     that the U.S. Parole Commission's decision violated his due process rights and his right to equal protection under the law;
>
> (2)     that the Commission engaged in impermissible double counting when it decided to depart from the guidelines based upon the petitioner's current and prior record of violence;
>
> (3)     that the D.C. Board of Parole created a presumption that the petitioner would be released on parole once he completed the two year "set-off" that the D.C. Board of Parole had ordered following his hearing in 1997;
>
> (4)     that the Commission exceeded its authority because it did not apply the 1987 D.C. parole guidelines as required by law;

(5) that the Commission ignored favorable information in the petitioner's record; and

(6) that the Commission "usurped judicial authority" by engaging in sentencing because it increased his sentence.

On August 15, 2006, the respondents filed a motion to dismiss or, in the alternative, for summary judgment. By order filed August 16, 2006, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the petitioner was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. The respondents filed an amended motion to dismiss or, in the alternative, for summary judgment on August 29, 2006, and a second *Roseboro* order was filed on August 30, 2006. On September 1, 2006, the petitioner filed an "affidavit in support of motion for writ of habeas corpus pursuant to 28 U.S.C. §2241," and on September 19, 2006, he filed his response to the motion to dismiss. The petitioner also filed a motion for preliminary injunction on September 25, 2006.

## APPLICABLE LAW AND ANALYSIS

The respondent has moved for dismissal of this action pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief can be granted or, in the alternative, for summary judgment pursuant to Rule 56. As matters outside the pleadings have been presented by the respondent and have not been excluded by this court, the motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) shall be treated as one for summary judgment pursuant to Rule 56. *See* Fed.R.Civ.P. 12(b)(6).

Rule 56 states, as to a party who has moved for summary judgment:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that

6

> there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the petitioner's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248. Accordingly, when Rule

56(e) has shifted the burden of proof to the non-movant, he must provide existence of every element essential to his action which he bears the burden of adducing at a trial on the merits.

The respondents have provided the following overview of the District of Columbia Parole Guidelines:

> The guidelines of the former D.C. Board of Parole (the D.C. Board) are described in detail in *Ellis v. District of Columbia*, 84 F.3d 1413, 1415-17 (D.C. Cir. 1996). Under these guidelines, a parole applicant is assigned a salient factor score, which is an "actuarial parole prognosis aid to assess the degree of risk posed by a parolee." *See* D.C. Mun. Regs. Title 28 (28 DCMR) § 204.3(1987). The salient factor score places the prisoner in a risk category which is assigned a numerical value. *See* 28 DCMR § 204.17. The Board then applies pre- and postincarceration factors to arrive at a total point score, which indicates whether parole may be granted or denied. *See* § 204.18. In the case of an adult offender, a total point score of 0, 1, or 2 indicates that parole may be granted after the initial hearing, and a score of 3 or more indicates that parole should be denied. *See* § 204.19. This score could be worked down to a favorable score after successive hearings if the prisoner earned enough point deductions for positive program achievement. *See* 84 F.3d at 1415-16. In a subsequent hearing, offenders with a point score of 0 - 3 may be granted parole. *See* § 204.21. The regulations permitted the Board to depart from the parole determination suggested by the guidelines "in unusual circumstances." *See* § 204.22.
>
> On August 5, 1998, the Parole Commission assumed jurisdiction over District of Columbia Code offenders through the National Capital Revitalization and Self-Government Improvement Act of 1997, Pub. L. No. 105-33, § 11231(a)(1), 111 Stat. 712, 745, D.C. Code § 24-131(a)("Revitalization Act"). The Revitalization Act gives the U.S. Parole Commission (the Commission) exclusive jurisdiction over all District of Columbia felony prisoners wherever confined. *See Franklin v. District of Columbia*, 163 F.3d 625, 632 (D.C. Cir. 1998). Although the Commission is required to follow the existing parole laws and rules of the District of Columbia, the Commission has the same authority previously enjoyed by the Board to "amend and supplement" the D.C. parole rules, which it has done. *See* D.C. Code § 24-131(a). Under this authority, the Commission promulgated, between 1998 and 2000, a

> series of amendments and revisions to the 1987 guidelines of the Board. *See* 28 C.F.R. § 2.70 *et seq*. These guidelines apply to all initial parole hearings conducted by the Parole Commission on or after August 5, 1998.
>
> In [the petitioner's] case, because his initial hearing was conducted by the D.C. Board, the Commission's decision have been rendered by reference to the D.C. Parole Guidelines in effect on August 4, 1998. *See* 28 C.F.R. § 2.80(a)(5).

(Resp. m.s.j. 6-7).

The respondents first argue that there is no merit to the petitioner's claim that the Commission violated his due process rights because it failed to apply District of Columbia parole law and guidelines. This court agrees. The Constitution does not give prisoners any inherent liberty interest in parole. *See Greenholtz v. Inmates of Nebraska Penal Correctional Complex*, 442 U.S. 1, 7 (1979) (holding that "[t]here is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence"). Further, it is well settled that the D.C. parole statute and applicable regulations do not create a liberty interest in parole. *Price v. Barry*, 53 F.3d 369, 370 (D.C. Cir. 1995) (holding that the District of Columbia Code did not create an expectancy of release); *Brandon v. D.C. Board of Parole*, 823 F.2d 644, 648 (D.C. Cir. 1987)(declining to find that D.C. parole procedures created a liberty interest in release on parole); *Ellis v. District of Columbia*, 84 F.3d at 1420 (holding that parole guidelines adopted for D.C. prisoners do not create liberty interest). Therefore, the petitioner does not have a protected liberty interest in receiving a grant of parole and cannot claim that the Commission violated his due process rights when it denied his release on parole.

Furthermore, the Commission complied with all applicable regulations and established law in departing from the guidelines. Under the regulations in effect when the D.C. Board considered the petitioner for parole (the 1987 guidelines), the D.C. Board was permitted to depart from the parole determination suggested by the guidelines

9

"notwithstanding any other provision of this section." *See* 28 DCMR § 104.11. The regulations also provide the following:

> The Board may, in unusual circumstances, waive the SFS and the pre and post incarceration factors set forth in this chapter to grant or deny parole to a parole candidate. In that case, the Board shall specify in writing those factors which it used to depart from the strict application of the provisions of this chapter.

*See* 28 DCMR § 204.22. The Parole Commission adopted a similar regulation at 28 C.F.R. § 2.80(n)(1) that permits departures from the guidelines in "unusual circumstances," which are defined as "case specific factors that are not fully taken into account in the guidelines and are relevant to the grant or denial of parole."

The petitioner's claim that the D.C. Board, using the 1987 guidelines, would have given him more lenient treatment than has been ordered by the U.S. Parole Commission is mere speculation. In fact, as argued by the respondents, it was not unusual for the D.C. Board to depart from the guidelines. *See Ellis v. District of Columbia*, 84 F.3d at 1419 (upholding parole denial based on D.C. Board's finding that the offense involved unusual cruelty to the victim, despite prisoner's total point score which indicated that parole should be granted); *Hall v. Henderson*, 672 A.2d 1047, 1055 (D.C. 1996)(upholding the D.C. Board's departure from the guidelines for unusual cruelty to the victim); *McRae v. Hyman*, 667 A.2d at 1360-61 (upholding D.C. Board's departure from the guidelines for repeat violent offender); *White v. Hyman*, 647 A.2d 1175, 1179-80 (D.C. 1994)(upholding D.C. Board's departure based upon finding that the prisoner's conduct demonstrate contempt for the criminal justice process); *Hannah v. Bureau of Prisons*, No. 2:04CV585, 2005 WL 1162519, *3 (E.D. Va. 2005) (holding that the prisoner's "risk to the community is a relevant factor to be considered at each parole hearing, and necessarily includes consideration of the underlying offense"). The D.C. Board did depart from the guidelines in the petitioner's case in 1997, and there is no indication that they were inclined to release

the petitioner on parole at his next parole consideration, as he claims. *See* resp. m.s.j., ex. E; *McKissick v. U.S. Parole Commission*, 295 F.Supp. 2d 643, 649 (S.D. W.Va. 2003), aff'd 67 Fed.Appx. 824 (4th Cir. 2003)(finding that it was impossible to assume that the D.C. Board would not have departed from the guidelines as did the Commission).

The petitioner argues that he would have been released on parole if his case had been considered under what he claims was the rehabilitative philosophy of the D.C. Board rather than the punitive philosophy of the Parole Commission. The District of Columbia parole laws did not require that a prisoner's rehabilitation or participation in institutional programs be determinative factors for parole. *See* D.C. Code § 24-404(a), which establishes the criteria for authorizing release on parole, and states the following:

> Whenever it shall appear to the Board of Parole that there is a reasonable probability that a prisoner will live and remain at liberty without violating the law, that his release is not incompatible with the welfare of society, and that he has served the minimum sentence imposed or the prescribed portion of his sentence, as the case may be, the Board may authorize his release on parole. . . .

The decision to parole prisoners was left to the D.C. Board's, and now the Commission's, discretion to determine "whether the prisoner is likely to be a responsible citizen if he is returned to the community and *whether release on parole is consistent with the public safety.*" *See White v. Hyman*, 647 A.2d at 1179 (emphasis added). That discretion is based upon statutory authority at D.C. Code § 24-404(a). *See Duckett v. U.S. Parole Commission*, 795 F.Supp. 133, 137-138 (M.D. Pa. 1992) (upholding Commission's departure from the guidelines and equating the Commission's finding that the prisoner posed a serious risk to the public with the statutory requirement that release be compatible with the welfare of society); *Page v. Pearson*, 261 F.Supp. 2d 528, 532 (E.D. Va. 2003)(holding that the Commission's departure from the guidelines, based on an acquitted offense and a record of violent behavior, was not arbitrary).

11

As argued by the respondents, in the petitioner's case, the determination that he is a serious risk if he is released to the community based upon his record of violence complies with the criterion that release be compatible with the welfare of society under D.C. Code § 24-404(a).

This court also agrees with the respondents that the petitioner has not shown that the Parole Commission has violated his right to equal protection under the law. He does not specify in what way he has been treated unfairly compared to other similarly situated D.C. Code prisoners. *See Moss v. Clark*, 886 F.2d 686, 691 (4th Cir. 1989) (the class to which the prisoner belongs consists of prisoners confined as he was confined and subject to the same conditions); *Brandon v. D.C. Board of Parole*, 823 F.2d at 650 (where prisoner makes no factual allegations that he has been treated differently, equal protection claim fails).

The petitioner claims that the Commission double counted because the factors the Commission used to deny parole and establish a set-off were already considered by the sentencing court when it determined the length of his sentence and were used in previous parole decisions to deny parole and establish a set-off. The respondents argue that the petitioner misunderstands the meaning of double counting and that, under the petitioner's logic, the Commission would be precluded from considering an offender's criminal history when it determines whether an offender is suitable to be released on parole and would be limited to considering only incidents that occurred or information obtained since the last hearing.

The law does not support the petitioner's view of the parole process. To the contrary, at each parole consideration, the Commission may consider available and relevant information in making its determination to release an offender on parole. *See* 28 CFR § 2.19. The Commission is not barred from considering information that was already considered by the sentencing judge to establish the sentence. *See Muhammad v.*

*Mendez*, 200 F.Supp. 2d 466, 472 n.6 (M.D. Pa. 2002) (the Commission is allowed to consider the same factors considered by the sentencing judge to make its determination as to whether release of a prisoner is appropriate under the applicable statutory criteria).

Double counting occurs when the same criteria used to establish the parole guidelines, or in the case of D.C. Code offenders the total point score, are used to justify a departure from those guidelines. *See Romano v. Baer*, 805 F.2d 268, 271 (7th Cir. 1986) (using aggravating factors to continue prisoner beyond the guidelines when such factors were used to place the prisoner in a particular severity category constitutes an abuse of discretion).

A prisoner's total point score is derived in part from the prisoner's salient factor score, which is comprised of six items including the number of prior convictions, the number of prior commitments of more than 30 days, the offender's age at the time of the current offense, and whether the offender was on parole or probation when he committed the current offense. *See* 28 DCMR § 204.4. Depending on the factors in his background, a prisoner's score will be between 0 and 10. A lower score predicts that a prisoner is more likely to violate parole. Item A scores prior adult and juvenile convictions. *See* 28 DCMR, Appendix 2-1 Salient Factor Score. The salient factor score does not account for someone who has accumulated more than four convictions nor does it distinguish between convictions for violent offenses and convictions for nonviolent offenses. *See Bialkin v. Baer*, 719 F.2d 590, 594 (2d Cir. 1983) (not double counting to conclude that offender with 7 prior convictions should be confined longer than offender with 4 prior convictions). Therefore, the salient factor score and resulting total point score took the petitioner's prior offense conduct only partially into account and did not reflect the multiplicity of violent episodes in his past. *See Hawkins v. U.S. Parole Commission*, 511 F.Supp. 460, 462-63 (E.D. Va. 1981) (citing *Grimes v. Garrison*, C.A. No. 80-0420-R (E.D. Va. 1981)) ("the nature and chronology of an offense may be taken into account to justify a decision above

13

the guidelines even though the offense was counted in a determination of ... the salient factor score."); *Stroud v. U.S. Parole Commission*, 668 F.2d 843, 847 (5th Cir. 1982) (because salient factor score focuses on number of prior convictions and the Commission's basis for exceeding the parole guidelines was the nature of those convictions, there was no double counting); *Mason v. U.S. Parole Commission*, 768 A.2d 591, 593 (D.C. 2001) (upholding five-year set-off and finding that the Commission did not double-count because the point score relies upon the number of prior convictions, but doesn't account for the degree of violence in any particular incident). Based upon the foregoing, this court agrees with the respondents that the Commission did not engage in impermissible double counting.

The petitioner next claims that there was a presumption that he would be paroled after he completed the two-year set-off imposed by the D.C. Board. The 1987 guidelines provided that a reconsideration hearing for an offender serving a sentence of five years or more would ordinarily occur within 12 months. *See* 28 DCMR § 104.2. The rule also, however, permits the D.C. Board to order longer set-offs in unusual cases. *See* 28 DCMR § 104.11 ("Notwithstanding any other provision of this section, the Board may order a parole reconsideration date it determines to be appropriate."). *See also Hall v. Henderson*, 672 A.2d at 1053 (finding that "[t]he Guidelines undoubtably reflect, rather than limit, the discretion that the District's municipal regulations and the parole statute already vest in the [D.C.] Board's set-off determinations"). In the petitioner's case, the Commission explained why his case was not ordinary and why a set-off which exceeded the guidelines was justified: his assaultive behavior indicated that he presented a serious risk to public safety.

To the extent the petitioner is making an *ex post facto* claim that at the time of his offense a set-off of more than one year was prohibited, his claim is also without merit. The petitioner committed his offense in 1986. At that time, there was no law

regarding length of set-offs: there were no D.C. parole guidelines, and the statute is silent on set-offs. *See* D.C. Code § 24-404. Therefore, the petitioner cannot demonstrate that the law in effect at the time of his offense required a rehearing within one year.

It is settled law that the D.C. Board's application of its 1987 guidelines to prisoners who committed their offenses prior to adoption of parole guidelines did not violate the *ex post facto* prohibition. *See Davis v. Henderson*, 652 A.2d 634, 636-37 (D.C. 1995) (retroactive application of 1987 guidelines did not violate *ex post facto* because the guidelines merely formalized the manner in which the D.C. Board exercised its discretion under the same parole statute in effect at the time of the offense); *see also Cruz v. Clark*, 684 F.Supp. 1335, 1339 (E.D. Va. 1988)(parole guidelines are not laws for *ex post facto* purposes).

The parole statute under which the Commission has made parole decisions for the petitioner is the same law that was in effect at the time of his offense: D.C. Code § 24-404. *See* D.C. Code § 24-131(c)("The Parole Commission shall exercise the authority vested in it by this section pursuant to the parole laws and regulations of the District of Columbia… ."). Therefore, there has been no retroactive application of law in the petitioner's case. Further, any *ex post facto* claim must fail because the petitioner has not proven that the Commission's decision was materially harsher than a decision of the D.C. Board would have been. *See California Department of Corrections v. Morales*, 514 U.S. 499, 509 (1995)(prisoner must show that the change in the law produced a "sufficient risk of increasing the measure of punishment attached to the covered crimes."). The Commission applied the same regulations as the D.C. Board applied in 1997. The regulations permitted the D.C. Board to exercise its discretion and depart from the guidelines, as it had in 1997 when it denied the petitioner parole and ordered a two-year set-off (resp. m.s.j., ex. E).

The petitioner challenges the Commission's decisions in 2000 and 2005 to depart from the guidelines and deny him parole after conducting reconsideration hearings. He specifically challenges the reasons provided by the Commission in the notice of action dated April 4, 2005, claiming that the reasons did not comply with the regulations.

This court agrees with the respondents that there is no merit to the petitioner's claim. The Commission's decision to deny parole is not subject to judicial review. Under D.C. law, there is no judicial review of parole decisions on their merits. *See Stevens v. Quick*, 678 A.2d 28, 31 (D.C. 1996)(holding that there is no review of the merits of the Commission's decision, only whether the prisoner has been deprived of any legal rights to which he was entitled); *Smith v. Quick*, 680 A.2d 396, 398 (D.C. 1996) (limiting review to procedures used to deny parole). Likewise, under federal law, the substantive decisions of the Commission to grant or deny parole are not subject to judicial review. *See Garcia v. Naegle*, 660 F.2d 983, (4th Cir. 1981) (the decision to grant or deny parole is an unreviewable decision committed to the Commission's discretion); *Farkas v. United States*, 744 F.2d 37, 39 (6th Cir. 1984) (holding that Congress intended that the Commission's substantive decisions would be committed to the unreviewable discretion of the Commission). A parolee may successfully challenge the Commission's decision only by showing that it was "either totally lacking in evidentiary support or so irrational as to be fundamentally unfair." *See Duckett v. Quick*, 282 F.3d 844, 847(D.C. Cir. 2002) (finding that in the case of parole revocation, if there is evidentiary support for the conclusion that the parolee violated a condition of parole the decision to revoke his parole is not fundamentally unfair).

In the petitioner's case, the Commission's decision was supported by information in the record evidencing his history of violent offenses and negative institutional behavior. Additionally, there is a rational basis for the Commission's decision. The Commission indicated in its reasons for exceeding the guidelines its concern for the

public's safety by finding that the petitioner is a more serious risk for parole based upon his repetitive assaultive behavior and violent propensities. These reasons are adequate reasons for departing from the guidelines, because "public safety" is a legitimate concern under D.C. law. *See White v. Hyman*, 647 A.2d at 1179; *Smith v. Quick*, 680 A.2d at 398 (holding that a written explanation indicating factors favoring incarceration, such as history of assaultive criminal behavior, is sufficient explanation under 28 DCMR § 204.22); *Hawkins v. U.S. Parole Commission*, 511 F.Supp. 460, 463 (E.D. Va. 1981) (holding that the Commission's written explanation "you have a repetitive history of assaultive behavior" fulfills the statutory and constitutional requirements for a written statement of its reasons for a decision above the guidelines).

The D.C. Board's regulations require that the Board specify in writing the factors it used to depart from the guidelines. *See* 28 DCMR § 204.22. The Commission's regulations require that it provide the prisoner with a notice of action which includes the reasons for the departure. *See* 28 C.F.R. § 2.74(b). Contrary to the petitioner's claim, the Parole Commission is not limited to the specific reasons that are stated in Appendices 2-1 and 2-2. *See White v. Hyman*, 647 A.2d at 1179 n.6 (upholding reasons given for departure from the prescribed set-off, although they were not specifically listed in the guidelines). In fact, Section VI(A)(1) of the D.C. Board's policy guidelines for reconsideration hearings, adopted on April 27, 1992, expands the list of possible reasons for exceeding the guidelines and states that "[t]he Aggravating factors considered by the Board include but are not limited to the following..." *See* resp. m.s.j., ex. M, Policy Guidelines for reconsideration hearings dated April 27, 1992. Finally, the form used by the D.C. Board to indicate the basis for its decision to exceed the guidelines includes factors such as "ongoing or repetitive criminal behavior," "prior record of violent behavior," and "other" factors. *See* resp. m.s.j., ex. C at 2 and ex. E at 2.

Based upon the foregoing, this court agrees with the respondents that the reasons given by the Commission following the petitioner's rehearings in 2000 and 2005 complied with the regulations and were neither lacking in evidentiary support nor fundamentally unfair because they specifically refer to the petitioner's unusually extensive and serious prior record.

The petitioner next claims that the Commission ignored favorable information in his case. There is no basis for this court to draw the inference that the Commission ignored favorable information simply because it denied parole notwithstanding factors in the petitioner's favor. *See Solomon v. Elsea*, 676 F.2d 282, 289-90 (7th Cir. 1982) (declining to adopt a sufficiency of the evidence standard of review where parolee claims that the Commission overlooked an "abundance" of favorable information). The Commission is not obliged to explain why it did not find that the petitioner's mitigating information was more persuasive than his prior record. D.C. Code §§ 24-401 through 409 does not require the Commission to explain the rationale for its decisions. This court agrees with the respondents that in the absence of a statutory requirement there is no mandate that the Commission provide a reason for its finding or specify the particular weight it assigned to the favorable information submitted by the petitioner.

Lastly, the petitioner claims that the Commission engaged in sentencing in violation of the separation of powers doctrine, alleging that the Commission "usurped judicial authority" by engaging in sentencing because it increased his sentence. The Superior Court of the District of Columbia sentenced the petitioner to an aggregate term of 15 years and four months to life. The Parole Commission's decision has in no way increased the petitioner's sentence; therefore, there is no merit to the petitioner's argument that the Commission has modified his sentence or violated the Separation of Powers doctrine. Likewise, his claim that he should be released after completing the minimum term is without merit. Service of the minimum term is only one factor that the Parole

Commission may consider in making its determination to release a prisoner on parole. *See* D.C. Code § 24-404(a). The probability that the prisoner will commit further crimes if released and the welfare of society are other considerations.

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, it is recommended that the respondents' amended motion for summary judgment (doc. 12) be granted. The respondents' original motion to dismiss or, in the alternative, for summary judgment (doc. 9) is moot as it has been replaced by the amended motion.

> s/William M. Catoe
> United States Magistrate Judge

February 6, 2007

Greenville, South Carolina